UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY PEABODY, as Guardian for
JENNIFER LYNN PEABODY, a mentally
Incompetent adult,

                                                      CASE NO. 04-73787
    Plaintiff,                            HON. LAWRENCE P. ZATKOFF

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 10, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant State Farm's Motion for Summary Judgment. Plaintiff Bradley Peabody has responded. Defendant has replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

Plaintiff Bradley Peabody filed the present action as the guardian of Jennifer Lynn Peabody. Jennifer was tragically injured in a car accident on May 7, 1987. She suffered a closed head injury which has caused her to be mentally incapacitated. Defendant State Farm Insurance Company ("State Farm") is Jennifer's no-fault insurance carrier and is responsible to pay no-fault benefits on her behalf.

Following her accident, Jennifer was in and out of various hospitals and rehabilitation facilities. In 1988, Jennifer was transferred to the PTI (Personal Therapists Incorporated) rehabilitation center in Livonia. Jennifer was there for approximately six years until 1995, when she moved to a home at 360 Neff in Grosse Pointe. This move brought Jennifer closer to the home of her parents who were Grosse Pointe natives. While Jennifer was at PTI, Defendant paid $575 per month for rent. Following her move to Grosse Pointe, Defendant continued to pay $560 per month, though Jennifer's monthly rent was now $1,500 per month.

In 2003, Jennifer's mother, through Jennifer's trust, purchased the house at 370 Neff for Jennifer to live in. The monthly mortgage for the home was $3300. Mrs. Peabody was able to find an upstairs tenant to pay $1,350 per month, leaving approximately $2000 per month as Jennifer's housing cost. Defendant continued to pay approximately $560 per month in rent over this time.

Plaintiff filed the present action pursuant to Michigan's No-Fault Insurance Act and alleges that Defendant owes him any uncompensated portions of Jennifer's room and board from 1995, when Jennifer moved out of the PTI rehabilitation facility, to the present. In addition to compensation for room and board, Plaintiff's Complaint asserts that since 2003, Defendant owes monthly amounts for utilities, phone service, cellular phone service, internet access, and cleaning.

*See* Plaintiff's Complaint, ¶ 9.

Defendant asserts that it has complied with the Michigan No-Fault Insurance Act and has paid Jennifer approximately $1.9 million in benefits since 1987. *See* Defendant's Brief, at 8. Accordingly, Defendant filed the present motion for Summary Judgment.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt

as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

The parties agree that the sole issue before the Court is whether Plaintiff is entitled to make a room and board claim under the Michigan No-Fault Act following the Michigan Supreme Court's recent decision in *Griffith v. State Farm Mutual Automobile Ins. Co.*, 472 Mich. 521 (2005). Because this question is one of statutory interpretation, it is a question of law and is therefore properly before this Court on the present Motion for Summary Judgment. *See Jenkins v. Patel*, 471 Mich. 158 (2004).

In *Griffith*, the plaintiff argued that the no-fault insurer should be required to pay the insured's food costs as an "allowable expense" pursuant to the Michigan No-Fault Act. The Michigan Supreme Court interpreted the relevant sections of the No-Fault Act, MCL § 500.3105(1) and MCL § 500.3107(1)(a), and in a 4-3 ruling on this controversial topic held that the no-fault insurer was *not* required to reimburse the plaintiff for the insured's food costs. *See Griffith v. State Farm*, 472 Mich. at 540.

Plaintiff argues that the Court should not apply *Griffith* to the present request for room and board and that instead, it should apply *Manley v. DAIIE*, 425 Mich. 140 (1986). Despite Plaintiff's assertion, the Court's approach in *Manley* is not applicable to the present dispute regarding room and board. In *Manley*, the Court clearly stated that it was *not* addressing the question "whether food, shelter, utilities, clothing, and other such maintenance expenses are an allowable expense when the

injured person is cared for at home." *Id*. at 152-53.  It further stated that the "opinion of the Court of Appeals on that question shall not be regarded as of precedential force or effect." *Id*.  The Court in *Griffith* offers further support for this position.  *See Griffith v. State Farm*, 472 Mich. at 528 ("When *Manley* was appealed to this Court, we effectively vacated the Court of Appeals room and board analysis.").  For these reasons, Plaintiff's reliance on *Manley* is misplaced.  The Court therefore looks to *Griffith* for the appropriate statutory analysis.

**A. MCL § 500.3105(1)**

In its opinion, the *Griffith* Court thoroughly explained its interpretation of the relevant sections of the Michigan No-Fault Act.  MCL § 500.3105(1) states: "Under personal protection insurance an insurer is liable to pay benefits for *accidental bodily injury* arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter. [Emphasis added.]" *Griffith v. State Farm*, 472 Mich. at 526.  MCL § 500.3107(1)(a) states:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations *for an injured person's care, recovery, or rehabilitation*. [Emphasis added.]

*Id*.

Regarding MCL § 500.3105(1), the Court stated that "a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Id*. at 531.  The Court then explained that plaintiff could not meet this requirement:

> Plaintiff does not claim that her husband's diet is different from that of an uninjured

5

> person, that his food expenses are part of his treatment plan, or that these costs are related in any way to his injuries. She claims instead that Griffith's insurer is liable for ordinary, everyday food expenses. As such, plaintiff has not established that these expenses are "for accidental bodily injury ...."

In the present case, and as in *Griffith*, Plaintiff cannot show that Jennifer's alleged room and board and other living costs are any different than those of an uninjured person. To the extent that Jennifer's costs *are* different, State Farm is already compensating Jennifer for those costs. State Farm has been paying approximately $560 per month to Jennifer for rent. This amount is similar to the amount State Farm paid for Jennifer when she was institutionalized between 1988 and 1995. In addition, when Jennifer moved in 2003 to 370 Neff, State Farm paid over $37,000 (the amount negotiated between the parties) in order to make the necessary renovations to the home to make it handicap accessible for Jennifer. Plaintiff has not established that any alleged housing or living costs above these amounts were related to Jennifer's injuries. Accordingly, Plaintiff's requested expenses are not compensable under *Griffith* because the expenses are not "for accidental bodily injury . . . ." *See Id.* at 532.

**B. MCL § 500.3107(1)(a)**

Even if Plaintiff's requested room and board expenses were compensable under MCL § 500.3105, an insurer would be liable for these expenses only if they were also "allowable expenses" under MCL 500.3107(1)(a). *See id.* That section states that "allowable expenses" are those which are "reasonably necessary" for an injured person's "care, recovery, or rehabilitation." *Id.* In *Griffith*, the Court examined whether food is reasonably necessary for the "care, recovery, or rehabilitation" of an injured person. After extensively analyzing this phrases's meaning, the Court concluded that the word "care" must not be interpreted so broadly as to render the other terms as surplusage, and that accordingly, "'care' must be related to the insured's injuries." *Id.* The Court

6

then concluded that the plaintiff's food costs were "completely unrelated" to his "care, recovery, or rehabilitation." *Id*. at 536. The Court explained that "[u]nlike prescription medications or nursing care, the food that Griffith consumes is simply an ordinary means of sustenance rather than a treatment for his 'care, recovery, or rehabilitation.'" *Id*.

In the present case, as in *Griffith*, Plaintiff has failed to present evidence that Jennifer's room and board are related to her "care, recovery, or rehabilitation." Instead, Plaintiff's scenario is precisely the type envisioned by the Court in *Griffith*. Jennifer's room and board and other living costs are ordinary daily costs which she would incur regardless of whether she was injured. The *Griffith* Court rhetorically addressed a similar scenario:

> This reasoning can be taken a step further when considering the costs of items such as an injured person's clothing, toiletries, and even housing costs. Under plaintiff's reasoning, because a hospital provided Griffith with clothing while he was institutionalized, defendant should continue to pay for Griffith's clothing after he is released. The same can be said of Griffith's toiletry necessities and housing costs. While Griffith was institutionalized, defendant paid his housing costs. Should defendant therefore be obligated to pay Griffith's housing payment now that he has been released when Griffith's housing needs have not been affected by his injuries?

*Id*. at 539. As *Griffith's* answer to this question is clearly "no" and because this Court must follow *Griffith*, the Court finds that Plaintiff's requested expenses are not compensable under MCL § 500.3107(1)(a).

Under *Griffith*, MCL § 500.3107(1)(a) was not enacted as a wage-loss benefit. The majority explained that plaintiff's requested reimbursement was "essentially seeking a wage-loss benefit," but that plaintiff's construction was "strongly undermined by the Legislature's express provision for, and limitation on, wage-loss benefits in § 3107(1)(b)." *Id*. at 540. Because this rationale is also applicable to the present facts, Plaintiff's requested expenses do not qualify as recoverable expenses under the No-Fault Act.

7

Though Plaintiff's position is not supportable under the majority's holding, Plaintiff does find support in the dissenting opinions of Justice Weaver and Justice Kelly. Justice Weaver asserts that there is

> no principled basis for deciding that food provided at home is not as much an "allowable expense" as the food provided in a licensed medical care facility. Where a person who normally would require institutional treatment is cared for at home in a quasi-institutional setting made possible by the love and dedication of the injured victim's family, the test for "allowable expenses" should not differ from that set out in MCL § 500.3107(a).

*Griffith*, at 541-42, Weaver dissenting (quoting Justice Boyle in *Manley v. DAIIE*, 425 Mich. 140 (1986)). Justice Kelley argues that the Legislature intended the no-fault act to be construed liberally in favor of the insured and that the majority's interpretation is irrational.

> The majority believes that food provided in the hospital qualifies as a benefit under the act. However, under its reading of § 3105, food would be excluded: the need of it does not arise from the injury. The majority explains that, in an institution, one has little choice what food is served. But it fails to explain how that fact transforms hospital food into an expense arising from an accident.

*Griffith*, at 545, Kelley dissenting. Justice Kelley also observes that the ***only*** difference in plaintiff's care in *Griffith* was that he was receiving it at home as opposed to in an institution, but that under the majority's opinion this difference required a different result under the No-Fault Act. Though this Court believes that the dissents' arguments offer support to Plaintiff's position, it is not for this Court to apply them. Instead, the Court must apply the *Griffith* majority's interpretation of the No-Fault Act to the present facts.

In conclusion, the Court finds that *Griffith* is applicable to Plaintiff's present request for room and board. Jennifer would have room and board expenses regardless of her current injuries. Section 3107(1)(a) does not provide compensation for such expenses, but only for those related to her "care, recovery, or rehabilitation." Because Plaintiff has presented no evidence that the

requested expenses were related to Jennifer's "care, recovery, and rehabilitation," the Court finds that Plaintiff's requested expenses for room and board, utilities, phone service, cellular phone service, internet access, and cleaning are not "allowable expenses" pursuant to MCL 500.3107(1)(a).

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


                s/Lawrence P. Zatkoff
                LAWRENCE P. ZATKOFF
                UNITED STATES DISTRICT JUDGE

Dated: January 10, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 10, 2006.

                s/Marie E. Verlinde
                Case Manager
                (810) 984-3290